UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LILLIAN RODRIGUEZ,

                Plaintiff,

     -against-

WAL-MART STORES EAST, LP,

                Defendant.
-------------------------------------------------------------------x

No. 16-CV-2603 (CS)

**OPINION AND ORDER**

Appearances:

Courtney Campbell
Sobo & Sobo, LLP
Middletown, New York
*Counsel for Plaintiff*

Patricia A. O'Connor
Brody, O'Connor & O'Connor
Northport, New York
*Counsel for Defendant*

Seibel, J.

    Before the Court is the Motion for Summary Judgment of Defendant Wal-Mart Stores, East, LP, ("Wal-Mart"). (Doc. 22.) For the following reasons, Defendant's Motion is GRANTED.

**I.    Background**

    The following facts are based on Defendant's Local Civil Rule 56.1 Statement of Material Facts, (Doc. 24 ("D's 56.1 Stmt.")), Plaintiff Lillian Rodriguez's Counter-Statement thereto, (Doc. 30 ("P's 56.1 Stmt. & Resp.")), Defendant's Reply to Plaintiff's Counter-Statement, (Doc. 32), and the supporting materials. The facts are undisputed except where noted.

A. Facts

On July 23, 2013, Plaintiff entered Defendant's Newburgh Wal-Mart (the "Store") with her friend, Jewel Martin. (P's 56.1 Stmt. & Resp. ¶ 6.) Ms. Martin went to get a shopping cart while Plaintiff continued toward the produce section. (*Id.* ¶¶ 7-8.) Based on video surveillance of the scene, in the minutes before Plaintiff's fall at 5:45:17 p.m., numerous individuals, many pushing shopping carts, walked through the relevant area, including a Wal-Mart employee who walked by at 5:42:52 p.m. (*Id.* ¶¶ 36-43.) There is no indication that there was water or liquid track marks on the floor before the incident or that anybody noticed anything unusual in the area. (*See id.* ¶¶ 38-43.) At approximately 5:43:52 p.m., a man driving a mechanized shopping cart stopped for about thirty seconds by a display of Ritz crackers and passed through the accident site at 5:44:43 p.m. (*Id.* ¶¶ 41-43.) At 5:45:17 p.m., Plaintiff slipped and fell onto her right side on the white tiled floor. (*Id.* ¶¶ 1, 9; Doc. 23 ("O'Connor Aff.") Exs. H, I; Doc. 23 Ex. D ("P's Dep.") at 18:16-19.) Plaintiff had not seen any liquid on the floor prior to her fall. (P's 56.1 Stmt. & Resp. ¶ 12.)

Ms. Martin was not near Plaintiff when she fell but heard Plaintiff calling her name and quickly approached, finding Plaintiff on the ground. (*Id.* ¶¶ 16-19.) Ms. Martin did not see anything on the floor around Plaintiff. (*Id.* ¶ 20.) While on the floor, Plaintiff realized her buttocks and knees were wet, (*id.* ¶ 10), and Ms. Martin testified in her deposition that Plaintiff's pants were "significantly wet" with "most of the inside of her thighs covered in water," (O'Connor Aff. Ex. E ("Martin Dep.") at 29:10-30:08). Ms. Martin tried to help Plaintiff get up but could not, so a male shopper helped Plaintiff to her feet. (P's 56.1 Stmt. & Resp. ¶¶ 21-22.) Plaintiff told Ms. Martin that she had slipped, and the two women searched the floor to see what might have caused the accident. (*Id.* ¶¶ 23-24.) The two women could not initially identify

2

anything on the floor as the source of the fall. (*Id.* ¶ 24.) Plaintiff then observed a clear substance that she testified looked "like a puddle of water." (*Id.* ¶¶ 10-11, 13; P's Dep. at 23:8.) Plaintiff did not know the source of this liquid. (P's 56.1 Stmt. & Resp. ¶ 14.) Ms. Martin observed four liquid track marks from what appeared to be a shopping cart. (*Id.* ¶¶ 24-25; Martin Dep. at 16:25-17:12.) Ms. Martin did not see any other water and had no idea how long the track marks had been there or how they were created. (P's 56.1 Stmt. & Resp. ¶¶ 25-28.)

The Store's asset protection manager testified that when an employee sees or is notified of a condition on the Store's floor, that employee guards the area until another employee arrives to clean up. (*Id.* ¶¶ 30-31.) "[A] couple of minutes" after the accident, a female employee arrived on the scene. (P's Dep. at 27:3-9.) A male employee with a walkie-talkie then arrived, followed by a few other employees. (O'Connor Aff. Ex. I at 5:47:24-5:48:40.) At 5:48:50 p.m., one of the Store's employees pointed at the floor by the Ritz display where the man on the mechanized cart had stopped before Plaintiff's fall. (*Id.* Ex. I at 5:48:45-5:48:54; P's 56.1 Stmt. & Resp. ¶ 45.) The employee then moved to stand guard a few displays away. (P's 56.1 Stmt. & Resp. ¶ 45; O'Connor Aff. Ex. I at 5:48:55.) Another employee then stood guard over the spot by the Ritz display to which her colleague had been pointing, straddling the floor area covered by a small amount of liquid. (P's 56.1 Stmt. & Resp. ¶¶ 46-47.)

Store employees responding to a customer incident are to take photographs and make an accident report within forty-eight hours. (*Id.* ¶ 32.) In a report of the incident, an employee noted that there was "wet dribble on the floor." (O'Connor Aff. Ex. G at 1.) Plaintiff filled out a customer statement noting that "there was water and [she] slip[ped]." (*Id.* Ex. G at 3.) Ms. Martin filled out a witness statement but made no mention of water being present. (*Id.* Ex. G at 4.) It is unclear when photographs of the scene were taken but, based on the video surveillance,

it appears that the area was photographed starting at around 5:51:50 p.m. (*See id.* Ex. I.) Thin liquid track marks leading away from a small amount of water are visible in the photographs taken of the area. (*See id.* Ex. H at 3; P's 56.1 Stmt. & Resp. ¶ 48.) The liquid "puddle" appears to take up less space than the foot of the nearby employee. (O'Connor Aff. Ex. H.)

Around 5:53:51 p.m. a maintenance employee arrived on the scene. (*Id.* Ex. I.) At 5:53:58 p.m., a female employee directed the maintenance employee's attention to the floor near the Ritz display by pointing at it. (P's 56.1 Stmt. & Resp. ¶ 49.) The maintenance employee wiped the floor by the Ritz display by moving paper towels on the ground using his feet. (*See* O'Connor Aff. Ex. I at 5:54:05-5:54:26.) The female employee who had been guarding the area near the Ritz display then also helped wipe down that area with paper towels. (*Id.* Ex. I at 5:54:23-5:54:30.) Other employees also wiped the floor a few displays away with paper towels, eventually working their way closer to where Plaintiff fell. (*Id.* Ex. I at 5:54:23-5:55:23.) The maintenance employee can be seen placing his mop down, leaving the video frame, and then returning and putting his mop away in the cart near the Ritz display, never mopping near the site of Plaintiff's accident. (*Id.* Ex. I at 5:55:05-5:55:55; Doc. 32 ¶ 49.)

B. Procedural History

On January 4, 2016, Plaintiff filed this action in the Supreme Court of the State of New York in Orange County, asserting a negligence claim. (Doc. 1 Ex. A.) On April 7, 2016, the case was removed to this Court on diversity grounds. (*Id.*) On February 28, 2017, Defendant requested a pre-motion conference to discuss a possible motion for summary judgment. (Doc. 11.) On March 30, 2017, the Court approved the parties' proposed briefing schedule for Defendant's potential motion for summary judgment. (Doc. 20.) On April 6, 2017, Defendant moved for summary judgment. (Doc. 22.)

## II.        Legal Standard

"[T]he issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, and accordingly is subject to federal rather than state law." *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02-CV-4196, 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated

speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

## III. Discussion

Under New York law, a plaintiff asserting a negligence claim must demonstrate "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (internal quotation marks omitted). In the context of premises liability and slip and fall cases, "the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004); *see Gorecki v. Painted Pony Championship*

*Rodeo, Inc.*, 6 F. App'x 103, 105 (2d Cir. 2001) (summary order) (proving breach of duty requires showing existence of dangerous condition and that defendant either created it or had actual or constructive notice of it). While in New York state court the Defendant would have to demonstrate it neither created the condition nor had notice of it, in federal court the Defendant, as the moving party, may point to the absence of evidence that it caused or had notice of the hazard, and thereby shift the burden to the Plaintiff to create an issue for trial through specific factual assertions. *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 400-01 (E.D.N.Y. 2010). In other words, in federal court the absence of evidence at the summary judgment stage redounds to the detriment of the Plaintiff, not the Defendant. *See Decker v. Middletown Walmart Supercenter Store #1959*, No. 15-CV-2886, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017) ("[B]ecause the burden of proof on a motion for summary judgment is procedural and federal law applies, Defendant may meet its burden by showing . . . that there is an absence of evidence to support the nonmoving party's case, but need not raise a prima facie case. If Defendant meets that burden, the burden then shifts to Plaintiff to present evidence on each element of the claim and demonstrate that a genuine issue of material fact exists for trial.") (citations and internal quotation marks omitted).

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. History*, 492 N.E.2d 774, 775 (N.Y. 1986).[1] "Constructive notice can be proven through circumstantial evidence, such as the circumstances surrounding the injury and the condition of the premises." *Castellanos v. Target Dep't Stores,*

---

[1] Plaintiff does not argue that Defendant created the condition or had actual notice of liquid on the floor. Accordingly, this opinion focuses on whether Defendant had constructive notice of any liquid on the ground prior to Plaintiff's fall.

7

*Inc.*, No. 12-CV-2775, 2013 WL 4017166, at *5 (S.D.N.Y. Aug. 7, 2013) (internal quotation marks omitted).  "[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant." *Stephanides v. BJ's Wholesale Club, Inc.*, No. 12-CV-83, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) (collecting cases).

Defendant argues that Plaintiff has not "adduce[d] any evidence that the substance on the floor was visible and apparent such that it should have been discovered by" Defendant prior to Plaintiff's fall. (D's Mem. at 4-5.)[2] The video surveillance shows no liquid on the floor in the relevant area prior to Plaintiff's fall. (*See* O'Connor Aff. Ex. I.)  In the minute and fifteen seconds before Plaintiff fell many customers passed through the accident site and none of them looked at the floor, avoided the area, or otherwise appeared to have come across any liquid on the ground. (*See id.* Ex. I at 5:44:00-5:45:15.)  Plaintiff admits that she did not see any water on the floor prior to her fall, (P's 56.1 Stmt. & Resp ¶ 12), and after Plaintiff's fall neither Plaintiff nor Ms. Martin were immediately able to find any source of the liquid on the floor, (*id.* ¶ 24). While Defendant's employees cleaned a stretch of floor beyond where Plaintiff fell, the photographs of the scene indicate that there was only a small circle of clear liquid along with thin clear track marks extending away. (*See* O'Connor Aff. Ex. H; D's Reply at 5 n.1.)[3]  Further, although Plaintiff's pants got wet, (*see* P's 56.1 Stmt. & Resp. ¶ 10; Martin Dep. at 29:10-30:8), deducing the amount of water on which she slipped based on this fact would be pure speculation. The cases on which Plaintiff relies all involved evidence of more water in the accident areas –

---

[2] "D's Mem." refers to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, (Doc. 25).

[3] "D's Reply" refers to Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment, (Doc. 33).

enough to support an inference that the condition was visible and apparent. *See Rivera v. Tops Mkts, LLC*, 4 N.Y.S.3d 431, 432 (4th Dep't 2015) (plaintiff observed multiple puddles of water after she had fallen); *Navetta v. Onondaga Galleries LLC*, 964 N.Y.S.2d 835, 837 (4th Dep't 2013) (puddle of water ten inches in diameter on floor in proximity to area where plaintiff fell); *King v. Sam's E., Inc.*, 917 N.Y.S.2d 480, 481 (4th Dep't 2011) (plaintiff's right pant leg was saturated with liquid and she observed a "dinner plate size of water" on the floor).

Taking all of this evidence in the light most favorable to Plaintiff, a reasonable juror could not conclude that any liquid on the floor prior to Plaintiff's fall was visible and apparent to Defendant. *See Decker*, 2017 WL 568761, at \*7 (granting summary judgment because condition not visible and apparent where "the surveillance video of the area where Plaintiff fell does not show any substance on the ground . . . [,] the video shows that four individuals walked through the same area mere seconds before Plaintiff fell without slipping, stopping or seeming to notice the alleged substance on the ground . . . [, and] both Plaintiff and her sister testified that they did not see the substance on the ground until after Plaintiff's fall") (citations omitted); *Castellanos*, 2013 WL 4017166, at \*1, 6 (granting summary judgment because condition not visible or apparent where plaintiff and her fiancé did not observe 8.5 by 11 inch "see-through and white" hard plastic display sign on "light colored" floor before plaintiff's fall and video did not "suggest that any of the dozens of customers or employees that walked through the area in the 25 minutes prior to the accident . . . were impeded in any way . . . [and n]one of them even appear[ed] to look at the portion of the ground where the accident occurred"); *Fay v. Bass Hotels & Resorts, Inc.*, No. 00-CV-9107, 2003 WL 21738967, at \*1, 4 (S.D.N.Y. July 28, 2003) (granting summary judgment because water not visible and apparent where after falling Mrs. Fay "'felt some dampness' on the back of her coat" but both plaintiffs admitted "that they did not – or

9

could not remember – seeing any liquid on the floor before or after [her] fall," and "assuming there was liquid on the floor, plaintiffs fail[ed] to offer any facts showing how long the liquid had been there before [the] fall"); *Gunzburg v. Quality Bldg. Servs. Corp.*, 26 N.Y.S.3d 274, 276 (1st Dep't 2016) (no constructive notice of "clear droplets in a small area less than two feet in diameter" that were not visible or apparent); *Cerkowski v. Price Chopper Operating Co.*, 891 N.Y.S.2d 192, 194 (3d Dep't 2009) (water the size of a pancake not visible or apparent); *Eaton v. Pyramid Co. of Ithaca*, 628 N.Y.S.2d 884, 884-85 (3d Dep't 1995) (no constructive notice where water was size of a circle formed by thumb and forefinger).

Even "[a]ssuming *arguendo* that the [liquid] was visible and apparent, there is no evidence as to when the [liquid] was spilled on the floor, and [P]laintiff's failure to offer such evidence is fatal to her claim of constructive notice." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998) (internal quotation marks omitted). Plaintiff argues that "[t]he significant cleaning activities of Defendant's employees observable on video recording, together with the photographs in which the water is visible and [her] testimony . . . , demonstrate clearly that a sizable amount of water existed for a sufficient amount of time for customers to track the water many feet in either direction and soak the pants of Ms. Rodriguez." (P's Mem. at 6 (citations omitted).)[4] None of this evidence, including that the water was tracked, tells us anything about how long the water was on the floor (except perhaps that it was more than a few seconds), let alone suggests that it lingered unattended for a significant amount of time.[5] (*See*

---

[4] "P's Mem." refers to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, (Doc. 31).

[5] That Plaintiff does not personally know how long the water was on the floor is not dispositive, *see Rivera*, 4 N.Y.S.3d at 432 ("'[T]he fact that plaintiff did not notice water on the floor before she fell does not establish defendant's entitlement to judgment as a matter of law on the issue whether that condition was visible and apparent.'") (alterations omitted) (quoting *Navetta*, 964 N.Y.S.2d at 837), but she still must produce some form of evidence from which a reasonable jury could infer that it was a long enough period to permit Defendant's employees to notice and remedy it, *see Borrero-Carrasquillo v. Target Dep't Stores Inc.*, No. 15-CV-4518, 2017 WL 700720, at *3 (S.D.N.Y. Feb. 10, 2017) ("Plaintiff must . . . produce evidence that the spill was present long enough for Target to bear responsibility for Plaintiff's fall.") (alteration and internal quotation marks omitted); *Greco v.*

10

P's 56.1 Stmt. & Resp. ¶ 27.) *See Gonzalez v. Kmart Inc.*, No. 13-CV-5910, 2016 WL 3198275, at *1, 4 (E.D.N.Y. June 8, 2016) (granting summary judgment where plaintiff "concede[d] that she *does not know* how long the substance that allegedly caused her fall had been on the floor prior to her accident, . . . the record [wa]s also devoid of any evidence that would permit a jury to make such a determination[,] Plaintiff simply offer[ed] no evidence regarding when the spill occurred or how long it had been there prior to the accident" and plaintiff admitted she had not seen the red liquid that appeared "wet, sticky, and slippery" before her fall) (emphasis in original); *Kane v. Human Servs. Ctr., Inc.*, 588 N.Y.S.2d 361, 362 (2d Dep't 1992) ("The mere existence of [a small round] puddle [of a clear, odorless liquid] on the floor is insufficient to impute notice to the defendant, and there is no evidence that the liquid was present on the hallway floor for such a period of time as to give rise to constructive notice."). There is also no evidence – such as a change in the consistency of the liquid or dried foot prints – from which the Court can infer that the liquid was on the floor for a sufficient period of time. *See Gordon*, 492 N.E.2d at 775 ("The record contains no evidence that anyone, including plaintiff, observed the [paper on which plaintiff slipped] prior to the accident. Nor did he describe the paper as being dirty or worn, which would have provided some indication that it had been present for some period of time. Thus, on the evidence presented, the piece of paper that caused plaintiff's fall could have been deposited there only minutes or seconds before the accident and any other conclusion would be pure speculation.") (citation omitted); *cf. Figueroa v. Pathmark Stores, Inc.*, No. 02-CV-4992, 2004 WL 74261, at *4 (S.D.N.Y. Jan. 15, 2004) (where someone observed "a trail of pink liquid leading from the front of the store though the checkout area with shopping

---

*Starbucks Coffee Co.*, No. 05-CV-7639, 2006 WL 1982761, at *3 (S.D.N.Y. July 14, 2006) ("In a slip-and-fall case, a plaintiff must show that the alleged condition was visible and apparent, and that it existed for a sufficient period of time before the accident to allow defendant to fix it.").

11

cart tracks and footprints through it, leading in different directions [, c]oupled with her observation that the liquid had become sticky and begun to change color and consistency in some places, a jury could infer that the pink liquid was present for an appreciable period of time") (citations omitted); *Galarza v. Walgreen E. Co.*, 653 N.Y.S.2d 577, 577-78 (1st Dep't 1997) (affirming denial of summary judgment where "the 'whole' aisle in which [plaintiff] fell was covered with, among other things, wet and dry green liquid and foot marks indicating that the liquid had been 'stepped on'"); *Catanzaro v. King Kullen Grocery Co.*, 599 N.Y.S.2d 74, 75 (2d Dep't 1993) (sufficient evidence for jury to conclude defendant had constructive notice where "there were several employees working in the vicinity of the spillage, and the injured plaintiff's husband testified that the footprints and wheel marks in the area surrounding the puddle were both wet and dry").

Plaintiff's argument that the liquid was on the floor for a sufficient amount of time before the accident because a Store employee walked through the relevant area three minutes before the fall, (P's Mem. at 9), is without merit. That person was never deposed; there is no evidence (from the video surveillance or otherwise) that there was liquid on the floor when she passed the relevant area at 5:42:52 p.m.; and it is entirely feasible that the water was deposited by one of the numerous people – most likely the man in the mechanized cart – who passed by after she left the area. *See Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) ("For all we know, the lotion may have been on the floor for a long time, or it may have spilled moments before [plaintiff] slipped on it. . . . [I]t would be speculative to infer that the lotion had been on the floor for an appreciable length of time.") (internal quotation marks omitted) (third alteration in original). Accordingly, Plaintiff has failed to meet her burden of

presenting facts from which a jury could conclude that Defendant had constructive notice of the dangerous condition.

"Under *Celotex*, the burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case. Because [D]efendant has done so here," and Plaintiff has not in response presented evidence raising genuine issues of material fact, summary judgment is granted. *Tingling*, 2003 WL 22973452, at *2 (citation and internal quotation marks omitted).

## IV.  Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment, (Doc. 22), is GRANTED.  The Clerk of Court is directed to terminate the pending Motion, (Doc. 22), enter judgment for the Defendant, and close the case.

**SO ORDERED.**

Dated:  September 11, 2017

   White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.